Christine M. **FAGER**, Appellant
(Plaintiff Below),

v.

**Junior HUNDT**, Appellee
(Defendant Below).

No. 75S05–9303–CV–341.

Supreme Court of Indiana.

March 12, 1993.

Stephen R. Bowers, Carlos A. Razo, Mellinger & Bowers, Elkhart, for appellant.

Jere L. Humphrey, Kizer & Neu, Plymouth, for appellee.

DICKSON, Justice.

Although filing her complaint approximately 22 years after the alleged occurrence of child sexual abuse upon which her damage claim is based, and over 15 years after attaining the age of majority, the plaintiff here seeks to avoid the two-year statute of limitations on grounds of repressed memory. To address this question of first impression in this Court, we grant transfer.

Plaintiff–Appellant Christine M. Fager alleges that she suffered emotional distress and ultimately a mental breakdown due to repeated sexual assaults and batteries inflicted by her father, Defendant–Appellee Junior Hundt, over a period of time during her minority. Invoking both the parental immunity doctrine and the statute of limitations, the trial court entered summary judgment in favor of the defendant. The Court of Appeals affirmed in an unpublished memorandum decision based solely upon the issue of parental immunity.

Since that decision, this Court has determined that parental tort immunity is not applicable to a cause of action predicated upon a claim of intentional felonious conduct. *Barnes v. Barnes* (1992), Ind., 603 N.E.2d 1337. As in *Barnes,* the plaintiff here alleges intentional felonious conduct, and no issue of parental privilege has been raised. Thus, parental tort immunity does not bar her claim.

The remaining issue is whether the trial court erred in granting summary judgment for the defendant upon his statute of limitations defense. In her complaint filed June 15, 1990, the plaintiff stated that she was born September 11, 1953, but did not specify any dates for the alleged repeated sexual assaults by the defendant. She generally asserted that they occurred "for a substantial period of time" during her minority. The complaint alleged that emotional trauma "had suppressed all memory or recollection of the incestuous conduct" until December of 1989. Record at 6–7.

The defendant responded with a motion to dismiss, claiming that plaintiff reached the age of majority on September 11, 1974, and thereafter failed to timely file this action within the applicable two-year statute of limitations. Ind.Code § 34–1–2–2. Following the defendant's filing of his deposition of the plaintiff, the trial court ordered that the motion to dismiss be converted to a motion for summary judgment. Ind.Trial Rule 12(B). Other than the plaintiff's complaint and her deposition, the defendant designated no other evidentiary matter for consideration on summary judgment.

As to her claim of repressed memory, the plaintiff testified in her deposition that her first realization of the alleged sexually abu-

sive experience with her father occurred in December, 1989, during a brief telephone conversation with her older brother. In response to defense counsel's question "[W]hen did you realize that he had molested you?" the plaintiff stated:

A. It came back to me the day that my brother called me on the phone and was inquiring about what was going on at the house, that [the defendant] was molesting two (2) younger girls, as of last year. And somehow it ringed a bell in his mind that he remembered when he was younger, my father used to come down to my room a lot, when I was a little girl. So he called and wanted to know if this was true. And to that point in time I never remembered until, you know, he just point blank came out and asked me. And I really didn't want to answer him then, for some reason; I just kept saying, "Why are you asking all these questions to me? Why are you asking me?", you know. . . .

Q. Why do you think you did answer?

A. I guess it must have just came back, you know, just like, "Gosh, I do remember, he did do this to me.", you know.

Record at 69–70. In response to defense counsel's inquiry as to why she had never told anyone of the incidents, the plaintiff replied:

A. Cause I didn't remember. I got to the point where I didn't remember he was doing it when he was doing it to me. Then I suppressed it that much. I guess it's hard to understand, but that's the way I done it, to survive.

Record at 72. At another point in the deposition the following colloquy occurred:

Q. But it's your testimony then that from the time of thirteen (13), I'm not trying to be precise on that, but whenever the last act occurred, until he asked you when you were thirty-seven (37) [sic], some twenty-four (24) years later,

that's the first time you had even thought about it?

A. Right.

Record at 77–78.

### Discovery Rule and Childhood Injuries

The plaintiff argues that her discovery at age 36 of sexual abuse last occurring when she was 13 or 14 years of age was reasonably delayed due to impaired cognition or memory loss generated by the trauma she experienced. She seeks application of the discovery rule to delay the commencement of the statute of limitations. She contends that her cause of action did not accrue until she discovered it as an adult, and that her complaint was thereafter timely filed. The defendant asserts that the claim is barred by the statute of limitations and that application of the discovery rule in this case runs counter to social policies served by statutes of limitations.

In cases involving repressed memory of childhood sexual abuse,[1] a number of jurisdictions permit the action notwithstanding a statute of limitations, generally leaving factual issues for determination at trial. *Daly v. Derrick* (1991), 230 Cal.App.3d 1349, 281 Cal.Rptr. 709; *Petersen v. Bruen* (1990), 106 Nev. 271, 792 P.2d 18 ("where the fact of abuse is clearly and convincingly corroborated"); *Jones v. Jones* (1990), 242 N.J.Super. 195, 576 A.2d 316 (psychological impact of incestuous sexual abuse held to constitute statutory insanity); *Osland v. Osland* (1989), N.D., 442 N.W.2d 907; *Meiers–Post v. Schafer* (1988), 170 Mich.App. 174, 427 N.W.2d 606 (jury question whether person "insane" under state statutory definition; corroboration required that assault occurred); *Hammer v. Hammer* (1987), Ct.App., 142 Wis.2d 257, 418 N.W.2d 23.

In contrast, several jurisdictions have applied statutes of limitations to bar such claims. *Lindabury v. Lindabury* (1989), Fla.App., 552 So.2d 1117; *Baily v. Lewis*

---

1. Where a plaintiff is aware of childhood sexual abuse but unaware of the full extent of the resulting psychological or physical ramifications, the statute of limitations has been applied to preclude the action, even in states which would apply a discovery rule. *Lovelace v. Keo-hane* (1992), Okla., 831 P.2d 624; *Franke v. Geyer* (1991), 209 Ill.App.3d 1009; 154 Ill.Dec. 710, 568 N.E.2d 931; *E.W. v. D.C.H.* (1988), 231 Mont. 481, 754 P.2d 817; *DeRose v. Carswell* (1987), 196 Cal.App.3d 1011, 242 Cal.Rptr. 368.

(E.D.Pa.1991), 763 F.Supp. 802, *aff'd Lewis v. Baily* (3rd Cir.1991), 950 F.2d 722; *Hildebrand v. Hildebrand* (S.D.Ind.1990), 736 F.Supp. 1512 (discovery rule presumed not applicable, decided before this Court's enunciation of Indiana's discovery rule in *Wehling v. Citizens Nat'l Bank* (1992), Ind., 586 N.E.2d 840); *Tyson v. Tyson* (1986), 107 Wash.2d 72, 727 P.2d 226 (superseded by statute permitting tolling of statute of limitations in such cases).

These decisions from other jurisdictions, grounded primarily upon diverse state statutory and case law, are not directly applicable. Resolution of this issue for Indiana requires consideration of both our state's statutory provision regarding the effect of legal disabilities upon statutes of limitations and our discovery rule for determining when causes of action accrue so as to commence the running of limitation periods.

Our cases clearly recognize that a tort claim accrues and the statute of limitations thus begins to run when the plaintiff knew or, in the exercise of ordinary diligence, should have discovered that an injury had been sustained as a result of the tortious act of another. *Madlem v. Arko* (1992), Ind., 592 N.E.2d 686, 687; *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 564; *Wehling*, 586 N.E.2d at 843; *Burks v. Rushmore* (1989), Ind., 534 N.E.2d 1101, 1104; *Barnes v. A.H. Robins Co., Inc.* (1985), Ind., 476 N.E.2d 84, 86.

■ When a cause of action arises from incidents occurring during a plaintiff's minority, however, application of the discovery rule can become problematic. The statute of limitations disability provision requires that, as to each cause of action accruing during the disability of minority, a plaintiff must bring the action within two years after reaching majority.

> Any person being under legal disabilities [2] when the cause of action accrues may bring his action within two (2) years after the disability is removed.

Ind.Code § 34-1-2-5. This grace period allows a person a reasonable opportunity upon reaching adult age to assess and assert his or her legal rights. Such opportunity, however, is of no avail to the new adult who lacks knowledge of early childhood trauma and injury. While the resulting complete deprivation of remedy could be redressed by a subjective application of the discovery rule from an injured child's perspective, this would have unacceptable ramifications.

■ The legitimate and proper role of statutes of limitations would be obviated in the many cases of ordinary injuries to children whose age or developmental limitations impaired or precluded their capacity to discover that an injury resulted from another person's tortious act. The present case, wherein the plaintiff claims a lack of cognition or memory of events at age 13 or 14, suggests even more commonplace sce-

---

2. The phrase "under legal disabilities" includes "persons less than eighteen (18) years of age, mentally incompetent, or out of the United States." Ind.Code § 1-1-4-5(21). The phrase "mentally incompetent" means "of unsound mind." Ind.Code § 1-1-4-5(10). The phrase "of unsound mind" is not presently defined. These definitions were adopted effective March 20, 1990, Pub.L. No. 1-1990, sec. 4, 1990 Ind. Acts 5 and Pub.L. No. 2-1990, sec. 5, 1990 Ind. Acts 244, contemporaneous with the repeal of Ind.Code § 34-1-67-1 which had provided a substantially equivalent definition for "under legal disabilities," and which defined "of unsound mind" to include "idiots, noncompotes (non compos mentis), lunatics and distracted persons." Eighteen years was established as the age of majority in 1973, replacing the former definition "persons within the age of twenty-one (21) years." Pub.L. No. 313, sec. 3, 1973 Ind. Acts 1716–17. The formerly used phrase "dis-tracted person" was construed to mean "a person who by reason of his or her mental state is incapable of managing or procuring the management of his or her ordinary affairs." *Duwe v. Rodgers* (1982), Ind.App., 438 N.E.2d 759, 761. It does not include one whose injuries do not rise to the level of unsound mind. *Id.* The plaintiff does not contend that her alleged repressed memory condition rendered her a distracted person under the definition in effect both when the plaintiff reached majority and when she filed this action. Furthermore, to the extent that she arguably may have become a distracted person after the accrual of a cause of action, such disability would not cease, arrest, or interrupt the running of the statute of limitations which had already commenced. *Walker v. Hill* (1887), 111 Ind. 223, 237, 12 N.E. 387, 394; *Sims v. Gay* (1886), 109 Ind. 501, 504, 9 N.E. 120, 121; *Kistler v. Hereth* (1881), 75 Ind. 177, 180.

narios. For example, a middle-aged claimant, suddenly learning that he had been involved as an infant in an automobile accident, could attempt to invoke the discovery rule to assert an action seeking damages for a permanent medical condition allegedly resulting. We therefore decline, in cases of childhood injuries, to apply the discovery rule subjectively based upon the child's actual knowledge.

The responsibility to learn of a child's injuries and to recognize that they may have been caused by the tortious act of another must fall to parents and legal guardians. When a young child sustains physical harm or is involved in a significant, potentially harmful incident, sound public policy assumes that the child's parents will observe, remember, and later communicate their knowledge of such events to the child when advancing maturity allows comprehension of the information for evaluation and possible action during the two-year grace period at the conclusion of minority.

It is the right and duty of parents to protect their children and to do whatever may be necessary for their care, maintenance, and preservation. 59 Am.Jur.2d *Parent and Child* § 14 (1987). It has long been recognized that the right of parents "is in the nature of a trust reposed in them, and is subject to their correlative duty to care for and protect the child." *Emmons v. Dinelli* (1956), 235 Ind. 249, 266, 133 N.E.2d 56, 63. A relation of trust and confidence exists between parent and minor child. *Novak v. Nowak* (1940), 216 Ind. 673, 677, 25 N.E.2d 993, 994. Parents are authorized to act on behalf of the child in many respects, including consent to "medical or other professional care, treatment, or advice for the minor's health and welfare." Ind.Code § 29-3-3-3(8); *see also* Ind.Code § 16-8-12-4. Actions for injuries to children may be maintained by a child's parent or guardian. Ind.Code § 34-1-1-8.

Because of the natural and legal obligations of parents to protect and care for their children, we hold that "discovery" of a cause of action by a child's parent, even absent actual cognition or memory by the child, shall be imputed to the child and shall conclusively constitute the accrual of an action within the meaning of the disability statute, Ind.Code § 34-1-2-5, thus allowing the minor two years after reaching majority within which to commence suit. However, this general rule must be subject to an exception when, as in the present case, the plaintiff's claim asserts childhood injury from the intentional felonious act of a parent.

Under such circumstances we cannot presume that the parent informed the child of significant childhood events. Rather, the doctrine of fraudulent concealment should be available to estop a defendant from asserting the statute of limitations "when he has, either by deception or by a violation of duty, concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action." *Burks*, 534 N.E.2d at 1104; *Guy v. Schuldt* (1956), 236 Ind. 101, 107, 138 N.E.2d 891, 894; *Spoljaric v. Pangan* (1984), Ind.App., 466 N.E.2d 37, 40; *see also Paramo v. Edwards* (1990), Ind., 563 N.E.2d 595. It should be noted that the fraudulent concealment exception does not establish a new date for the commencement of the statute of limitations, but rather creates an equitable exception. *Burks*, 534 N.E.2d at 1104–05; *Spoljaric*, 466 N.E.2d at 45. Under this exception, instead of a full statutory limitations period within which to act, a plaintiff must exercise due diligence in commencing her action after the equitable grounds cease to operate as a valid basis for causing delay. *Burks*, 534 N.E.2d at 1105. When the fraudulent concealment exception applies, we hold that the equitable grounds cease when a person, once becoming an adult, knows or should have discovered that a childhood injury was sustained as a result of the defendant's tortious conduct.

### Summary Judgment

The plaintiff contends that the trial court erred in granting summary judgment upon the defendant's statute of limitations defense. While a party appealing from a

summary judgment has the burden to persuade the reviewing court that the trial court's decision was erroneous, appellate scrutiny must assure that the non-prevailing party is not improperly denied a day in court. *Oelling v. Rao* (1992), Ind., 593 N.E.2d 189, 190; *Indiana Dep't of State Revenue v. Caylor–Nickel Clinic* (1992), Ind., 587 N.E.2d 1311, 1313. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party has the burden to prove the nonexistence of a genuine issue of determinative material fact. All evidence and reasonable inferences must be construed in favor of the nonmovant, and any doubt should be resolved against the moving party. Once the movant has sustained this burden, the opponent must respond by presenting specific facts showing that there is a genuine issue for trial. Ind.Trial Rule 56; *Oelling*, 593 N.E.2d at 190.

■■■ Resting for support upon her deposition testimony, the plaintiff argues that the childhood experience of sexual activity between her and her father caused her to suffer repressed memory until age 36 when she finally recalled the incidents, whereupon she commenced this action six months later. Her claim of repressed memory presents a phenomenon of human behavior that has recently received considerable scientific attention,[3] although its existence and validity is not without dispute.[4]

■■■ In response to the motion for summary judgment asserting the statute of limitations defense, the relevant specific facts presented by the plaintiff support the inference that she was unaware of some of the sexual acts as they occurred and did not discover them until age 36. Until today's decision, this factual response may have been sufficient to invoke the general tort discovery rule and avoid summary judgment. However, as discussed above, we have now held that a parent's discovery of a child's cause of action is conclusively imputed to the child, subject to fraudulent concealment exception. The plaintiff did not present specific facts showing that her lack of memory resulted from a concealment caused by the defendant's deception or breach of duty. While her deposition testimony opined that her memories were "suppressed," such conclusory statements are generally disregarded in determining whether to grant or deny a motion for summary judgment. *Paramo*, 563 N.E.2d at 600. The plaintiff submitted no affidavits or depositions of qualified witnesses providing expert opinion to support the scientific validity of repressed memory and to establish that her normal powers of perception and recollection had been obscured by the phenomenon as a result of her father's sexual acts with her. We also note that the defendant did not file any motion to strike or object to the plaintiff's conclusions regarding repression, which failure generally results in waiver. *Id.*

■■■ Neither the plaintiff's failure to respond to the summary judgment motion with specific facts showing the fraudulent concealment exception nor the defendant's failure to object to the plaintiff's conclusory statement regarding repressed memory should be determinative in this case. Our decision to conclusively impute parental

---

**3.** The experience of child sexual abuse is recognized as often accompanied by symptoms of dissociation or depersonalization involving an alteration in the victim's perception so that the child's usual sense of reality is temporarily lost or changed. C.B. Scrignar, *Post–Traumatic Stress Disorder* 149 (1984). One study has revealed that 64 percent of the adults in an incest survivors' group did not have full recall of their childhood abuse and suffered some degree of amnesia. J.L. Herman and E. Schatzow, *Recovery and Verification of Memories of Childhood Sexual Trauma*, in Psychoanalytic Psychology, 4(1), 1–14, (1987). Some children succeed in blocking trauma from their consciousness by "dissociating themselves from the act when it occurs." Christopher Bagley and Kathleen King, *Child Sexual Abuse* 139 (1990). More commonly dissociation begins after the injury. Scrignar, *supra*, at 150. The term "repressed memory syndrome" has been applied to individuals with absolutely no memory of the abuse as well as to those who remember parts of the incident but have a significant amount of amnesia. Renee Fredrickson, *Repressed Memories: A Journey to Recovery From Sexual Abuse* 40 (1992).

**4.** *See, e.g., Tyson v. Tyson* (1986), 107 Wash.2d 72, 727 P.2d 226; Marianne Wesson, *Historical Truth, Narrative Truth, and Expert Testimony*, 60 Wash.L.Rev. 331 (1985).

discovery to children except for fraudulent concealment was not available to the parties at the time of the trial court's consideration of summary judgment. It would be unfair to expect the parties to anticipate a legal doctrine not then recognized. Absent strong and compelling reasons, prospective application is the normal construction to be given new rules of law. *Manns v. State Dep't of Highways* (1989), Ind., 541 N.E.2d 929, 936. Proper determination of the defendant's motion for summary judgment should afford the parties an opportunity to present factual support as to whether genuine issues remain for trial regarding the concealment exception.[5] These include whether the defendant's conduct, by deception or violation of duty, operated to conceal material facts from the plaintiff, preventing her from commencing the action within the two-year grace period provided by Ind.Code § 34-1-2-5 and, if so, whether the plaintiff exercised due diligence in bringing the action when, as an adult, she first knew or should have discovered that she had been injured by her father's tortious conduct.

Transfer is granted. The previous entry of summary judgment is vacated and this cause is remanded to the trial court for further consideration of the motion for summary judgment and for further proceedings not inconsistent with this opinion.

SHEPARD, C.J., and DeBRULER, GIVAN and KRAHULIK, JJ., concur.

---

[5.] While the fraudulent concealment exception is an equitable doctrine, the relevant facts may be determined by a jury in the event of trial. Despite the longstanding rule that whenever a cause of action is in equity the entire action is drawn into equity, thus extinguishing the right to a jury trial, the converse is also true. Where a cause of action is not such as to invoke equity jurisdiction, it is considered to be an action at law subject to trial by jury. *Winney v. Board of Comm'rs of County of Vigo* (1977), 174 Ind.App. 624, 628-29, 369 N.E.2d 661, 663. The right to have facts determined by a jury depends upon the general nature of the claims constituting the cause of action and not upon subsidiary issues that may arise within such claims. *Howell v.*

*State Farm Fire and Cas. Co.* (1988), Ind.App., 530 N.E.2d 318, 319; *Gumz v. Bejes* (1975), 163 Ind.App. 55, 60, 321 N.E.2d 851, 855; *Hiatt v. Yergin* (1972), 152 Ind.App. 497, 513-14, 284 N.E.2d 834, 843; Ind.Trial Rule 38(A). Here the fraudulent concealment exception is an issue subsidiary to the statute of limitations defense which in turn is subsidiary to the plaintiff's action at law. Furthermore, when the applicability of the statute of limitations rests upon questions of fact, it is generally an issue for jury determination. *Burks*, 534 N.E.2d at 1104, citing *Montgomery v. Crum* (1928), 199 Ind. 660, 161 N.E. 251; *Monsanto Co. v. Miller* (1983), Ind.App., 455 N.E.2d 392.